308 So.2d 366 (1975)
Julius L. FLEMING, Indiv., etc.
v.
STATE DEPARTMENT OF HOSPITALS, State of Louisiana, et al.
No. 10136.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
Rehearing Denied March 10, 1975.
Writ Refused June 6, 1975.
*367 Martin C. Schoeder, Jr., Baton Rouge, for appellant.
Carey J. Guglielmo, Baton Rouge, for appellees.
Before SARTAIN, ELLIS and de la HOUSSAYE, JJ.
ELLIS, Judge.
This is a suit for personal injuries allegedly suffered by Joseph Lee Fleming and Berto Boles Fleming, his mother, in an ambulance-automobile collision on the morning of February 27, 1971. During the preceding night, Joseph had been injured in another accident and was examined at Our Lady of the Lake Hospital and Earl K. Long Charity Hospital in Baton Rouge. He was then sent by a Department of Hospitals ambulance to Charity Hospital in New Orleans. The ambulance, which was operated by Louis A. Maggio, was involved in a collision with an automobile operated by Joseph C. Juneau at the intersection of the inbound lane of Tulane Avenue and the downtown lane of South Claiborne Avenue.
Original plaintiffs were Julius L. Fleming, individually and on behalf of his minor son, Joseph, and Mrs. Fleming. At the trial, it was asserted that Joseph had come of age, and he was substituted as party plaintiff in his own behalf. Defendants are the State of Louisiana, through the Department of Hospitals, Mr. Maggio, Fidelity & Guaranty Insurance Underwriters, Inc., their insurer, and Joseph C. Juneau. Apparently no service was made on Mr. Juneau, and he is not a party to the judgment appealed from.
After trial on the merits, judgment was rendered in favor of defendants, dismissing plaintiffs' suit and plaintiffs have appealed. The trial court found no negligence on the part of Louis A. Maggio and was of the opinion that Joseph suffered no additional injuries in the accident and that Mrs. Fleming received only minor bruises.
R.S. 32:24 provides:
"A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
"B. The driver of an authorized emergency vehicle may:
"(1) Park or stand, irrespective of the provisions of this Chapter;

*368 "(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
"(3) Exceed the maximum speed limits so long as he does not endanger life or property;
"(4) Disregard regulations governing the direction of movement or turning in specified directions.
"C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
"D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."
The evidence shows that the ambulance was on an emergency mission, transferring young Fleming, who suffered serious injuries in the first accident, to New Orleans Charity Hospital. Mrs. Fleming was riding as a passenger in the front seat. All emergency lights were flashing and the siren was in operation. Mr. Maggio was faced with a red light for traffic inbound on Tulane Avenue when he crossed Claiborne Avenue.
He crossed the uptown lane of Claiborne Avenue and traversed its wide neutral ground. When he came to the downtown lane, he slowed almost to a stop and looked to his right. He saw one car stopped on Claiborne and then proceeded to cross. The ambulance was struck by Mr. Juneau when about half-way across the street. Mr. Maggio never did see the Juneau vehicle, which was apparently being driven at a high rate of speed.
We think the trial judge erred in finding Mr. Maggio to be without fault. Obviously, the Juneau vehicle was there to be seen, and Mr. Maggio should have seen it. His failure to do so constitutes a violation of R.S. 32:24, supra, and is a proximate cause of the accident which ensued.
However, we are unable to find that young Fleming suffered any injuries in this accident beyond those already suffered in the earlier accident. The results of the clinical and x-ray examinations and the diagnoses at both the Earl K. Long Hospital and the New Orleans Charity Hospital are exactly the same. There is no competent medical evidence that there was any exacerbation of the earlier injuries or that any additional injuries were inflicted by the second accident. No recovery can be allowed on behalf of Joseph Lee Fleming.
Berto Boles Fleming was examined on the day of the accident at both New Orleans Charity Hospital and Earl K. Long Charity Hospital. She was found to have bruises on her right hip and thigh, and was observed to be "dragging" her right leg. Although she complained of continuing pain in her leg, back, arm and neck until the time of the trial, there is no medical evidence to substantiate her claims, and she never sought further medical treatment. We agree with the trial judge that she suffered only minor bruises. We think $250.00 should amply compensate her for her injuries.
The judgment appealed from is affirmed insofar as it dismissed the suit of Joseph Lee Fleming; it is reversed insofar as it dismissed the suit of Berto Boles Fleming, and there will be judgment herein in favor of Berto Boles Fleming, and against the defendants, in solido, for $250.00 together with legal interest from the date of judicial demand until paid. Costs are to be borne equally by Julius Lee Fleming and the defendants.
Affirmed in part, reversed in part, and rendered.